United States District Court
District of Massachusetts

| | |
|---|---|
| KEITH PEARSON,<br>    Plaintiff,<br><br>v.<br><br>MASSACHUSETTS BAY TRANSPORTATION<br>AUTHORITY,<br>    Defendant. | Civil Action No.<br>08-11733-NMG |

MEMORANDUM & ORDER

GORTON, J.

Plaintiff Keith Pearson ("Pearson") has filed suit against defendant Massachusetts Bay Transportation Authority ("MBTA") for race discrimination and retaliation in violation of M.G.L. c. 151B, § 4 ("Chapter 151B") and Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.) ("Title VII").

I. **Background**

Plaintiff's claims are based upon 1) his suspension from work in October, 2006 and his subsequent termination in May, 2007 as well as 2) discrimination and retaliation which allegedly persisted after an Arbitrator ordered his employment reinstated in October, 2007 and upon his return to work in January, 2008.

In March, 2012, this Court accepted and adopted a Report and Recommendation by Magistrate Judge Marianne B. Bowler that summary judgment enter in favor of the defendant on all of plaintiff's claims except the claim of race discrimination upon

his reinstatement of employment. Magistrate Judge Bowler noted, and this Court agreed, that the defendant had neglected to move for summary judgment with respect to that portion of the case. Thus, the sole remaining claim left for this Court's consideration is race discrimination in violation of Title VII and Chapter 151B based upon allegedly discriminatory actions plaintiff endured upon his reinstatement.

In May, 2012, the defendant, with leave of Court, filed a second motion for summary judgment, arguing that the remaining claims must be dismissed as unsupported and conclusory. Shortly thereafter, the defendant filed a supplemental memorandum in support of its motion for summary judgment to argue that the remaining claims must be dismissed due to plaintiff's failure to exhaust administrative remedies. Plaintiff has opposed the motion for summary judgment and denied that his claims are administratively foreclosed.

The facts underlying this case were summarized extensively in a prior order of this Court and will not be repeated here. Instead, the Court will assume familiarity with that record and will incorporate and/or supplement additional facts where necessary.

## II. Analysis

### A. Legal Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991). The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." Id. A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). Summary

judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.

**B. Application**

In the absence of direct evidence of discrimination, the Court applies the well-established McDonnell Douglas burden-shifting framework to evaluate an employment discrimination claim. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003). "Although created for use in Title VII cases, this framework is also applied when evaluating discrimination claims under Chapter 151B." Benoit, 331 F.3d at 173.

Under that approach, a plaintiff must first establish a prima facie case of racial discrimination by demonstrating that 1) he belonged to a protected class (a racial minority), 2) he was performing his job at an acceptable level and 3) he suffered an adverse employment action. Sensing v. Outback Steakhouse of Fla., LLC, 575 F.3d 145, 154 (1st Cir. 2009). If the plaintiff is successful, the burden of production shifts to his employer "to articulate a legitimate, non-discriminatory reason for [its] employment decision and to produce credible evidence to show that the reason advanced was the real reason." Id. If the employer offers such a reason, the burden shifts back to the plaintiff to

prove that his employer's justification is mere pretext for discriminatory animus. Id. "The ultimate burden of proving unlawful discrimination rests at all times with [the plaintiff]." Tobin v. Liberty Mutual Ins. Co., 433 F.3d 100, 105 (2005).

In his First Amended Complaint, Pearson alleged that, following his reinstatement, he suffered discrimination and retaliation by the MBTA as a result of the following:

1) delay in his return to work after the Arbitrator's decision, delay in payment of backpay and an accusation of insubordination for failure to appear for a back-to-work physical examination;

2) after Pearson's return to work, delay in submitting weekly paychecks and providing a computer (and then providing only a used computer with no printer or fax for support);

3) denial of voicemail and a separate office or phone line;

4) requiring Pearson to use an office at Cabot Tower South "under difficult and inappropriate conditions";

5) subjecting Pearson to "unnecessary and uncalled for" Fitness for Duty Examinations;

6) failure of his supervisors to answer his phone calls (including during emergencies); contradiction of his work assignments "for no valid reason"; inappropriate reprimands in front of his subordinates; and deliberate and unnecessary inquiries throughout the MBTA system as to Pearson's whereabouts which put him in "a negative light";

7) imposing wrongful discipline after Pearson's medical or physical therapy appointments and for attendance issues, and for making repeated, wrongful threats of discipline for attendance issues "for which no discipline was appropriate"; and

8) failure to provide Pearson with "attendance waiver

forms".

In opposition to the MBTA's second motion for summary judgment, Pearson simply re-alleges, verbatim, those allegations without further elaboration. While the MBTA has presented credible record evidence of non-discriminatory motives for each action it took, Pearson has offered no rebuttal evidence and has even failed to explain most of his allegations. Instead, he reiterates his allegations of pre-reinstatement discrimination and argues that, because a reasonable factfinder could determine he endured discrimination then, it would be reasonable to infer that the MBTA's post-reinstatement actions also derived from racial animus. This Court has already concluded, however, that a reasonable factfinder could not find that the MBTA's pre-reinstatement actions were pretextual or were motivated by racial discrimination. Pearson's post-reinstatement allegations cannot derive an inference of racial discrimination from a set of facts the Court has previously concluded do not, either singly or together, evidence discrimination.

Pearson also contends that his being forced to share an office with a fellow employee, Mr. Vey, who made racist comments to him proves that all the post-reinstatement actions he describes were motivated by racial animus. The "taint" of the MBTA's inaction in failing to remove that employee to a different office, he argues, "serves to require a reasonable fact-finder to

determine that all of the adverse actions complained of were racially motivated."

The Court is unconvinced. It has already determined, when it allowed summary judgment on Pearson's post-reinstatement retaliation claims, that the record (including Pearson's own deposition testimony) indicates that the MBTA attempted to resolve a race-based work problem and did not engage in materially adverse employment action by placing Pearson in close contact with Mr. Vey. Pearson, in his "taint" argument, does not rebut that conclusion or direct the Court's attention to contrary record evidence.

Finally, as with his post-reinstatement retaliation claims, the plaintiff has again failed to prove that 1) the MBTA treated him differently in the enforcement of blanket paperwork or physical examination requirements, 2) failed to show how or why his new position constituted a "dead-end" position and 3) failed to prove he endured more than the kind of minor annoyances that lie outside the scope of the anti-discrimination laws.

Accordingly, the Court will allow the defendant's second motion for summary judgment and dismiss the plaintiff's remaining claims.

## ORDER

In accordance with the foregoing, the defendant's second motion for summary judgment (Docket No. 26) is **ALLOWED**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated July 9, 2012